IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THADDEUS JARVIS                                                        PLAINTIFF

v.                                                          No. 4:24CV3-MPM-RP

BURL CAIN, ET AL.                                                     DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Thaddeus Jarvis, who challenges the conditions of his confinement under 42 U.S.C. § 1983. That statute provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1]

**Procedural Posture**

The plaintiff sets forth six allegations: (1) The defendants used excessive force against him during a statewide prison riot in 2020 (causing a chipped tooth); (2) He suffered unconstitutionally harsh general conditions of confinement for a week after the riot when he was relocated from his normal housing unit to a closed part of the Mississippi State Penitentiary (MSP) – Unit 32; (3) The defendants lost his personal property during his relocation after the prison riot and failed to return it; (4) The showers at the Mississippi State Penitentiary do not meet the requirements of the Americans with Disabilities Act (ADA); (5) The defendants failed to provide him with adequate medical care for

_____

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

his injuries after the riot and for his various physical ailments and mental health conditions; and (6) The defendants denied his request to participate in the MDOC Mental Health, Substance Abuse Program.

Defendant Centurion of Mississippi, LLS (Centurion), a private medical company that was under contract to provide medical services for certain institutions within the Mississippi Department of Corrections (MDOC), seeks [43], [50] summary judgment, arguing: (1) Jarvis has failed to exhaust his prison administrative remedies regarding his medical claims (a requirement to proceed under 42 U.S.C. § 1983); (2) The plaintiff's allegations fail to state a valid constitutional claim; (3) The plaintiff has not offered any competent evidence to support his allegations (as required under Fed. R. Civ. P. 56); and (4) The plaintiff's claims are barred by the applicable 3-year limitations period. The plaintiff has not responded to either motion, and the deadline to do so has expired.

For the reasons set forth below, the defendant's motions [43], [50] for summary judgment will be granted, and the instant case will be dismissed. The plaintiff's sole exhausted claim (that the defendants failed to permit him to participate in a mental health and substance abuse program) will be dismissed with prejudice for failure to state a claim upon which relief could be granted. In addition, his remaining claims will be dismissed for failure to exhaust administrative remedies.[2, 3]

## Factual Allegations

On January 9, 2024, Thaddeus Jarvis, a *pro se* litigant incarcerated at East Mississippi

---

[2] The instant summary judgment motion was filed only on behalf of defendant Centurion; however, where, as here, a defending party shows that a plaintiff has no cause of action, that defense also benefits any unserved, non-moving, or defaulting defendants. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). As such, the remaining defendants (including defendant Richard Pennington, who has not joined the issues in this case) will be dismissed for the same reasons as Centurion.

[3] As the grounds for dismissal of the plaintiff's allegations are clear, the court will not address the other potential grounds raised by the defendants.

Corrections Facility (EMCF), filed this lawsuit pursuant to 42 U.S.C. § 1983. Doc. 1. He lists several causes of action against all named defendants, alleging violations of his constitutional rights under § 1983. *Id.* The complaint does not clearly describe the role each defendant played regarding his allegations. Centurion provided specified healthcare services to certain MDOC facilities between July 1, 2016, and October 5, 2020. *See* Exhibit A (Redacted Agreement between MDOC and Centurion); *see also* MDOC Request for Proposal 16-009 for Correctional Health Care Services, https://www.ms.gov/dfa/contract_bid_search/Bid/Details/4213.[4, 5]

In his complaint, Jarvis alleges that he filed grievances related to the claims presented in his complaint. *Id.* Administrative Remedy Program ("ARP") records, produced in this matter by the Mississippi Department of Corrections ("MDOC"), confirm that the plaintiff submitted various grievances during his incarceration. These included complaints regarding the condition of showers and bathrooms at MSP, requests to enter the Substance Use Disorder Program, and allegations of inadequate medical care. *See e.g.,* Exhibit B.

Of the grievances documented in Jarvis' ARP record, only one addresses medical and dental care provided during the period when Centurion held the healthcare services contract with MDOC. *See id.* at MDOC-JARVIS 3-000069-70. In early 2020, after he was transferred from MSP to TCCF, he submitted multiple grievances through TCCF's ARP. *Id.* One included claims that he believed he would be denied medical and dental care in the future if he was ever transferred back to MSP. *See id.*

---

[4] Centurion was not able to upload a physical copy of the MDOC Request for Proposal 16-009 for Correctional Health Care Services to the Court's website; however, that document is unnecessary for resolution of the instant motions. According to documents the defendant has provided, the contract began on July 1, 2016, and would end on June 30, 2019, with possibility of an extension of up to two years. The stated date of contract termination (October 5, 2020), falls well within the two years.

[5] The exhibits referenced in this memorandum opinion may be found attached to the defendant's Motion [50] for Summary Judgment.

This grievance was denied because it sought relief beyond the ARP's authority and related to possible events that had not occurred. *Id.* at MDOC-JARVIS 3-000061. Centurion's contract with MDOC did not, however, include providing medical care at TCCF. *See* Exhibit A, p. 1. The plaintiff did not take any further action to amend or resubmit these grievances for proper review. He likewise did not submit any grievance about his medical or dental care at any facility in which Centurion provided healthcare services. *See* Exhibit B at MDOC-JARVIS 3-000061 (Director of ARP rejected grievance).[6]

On June 6, 2025, Centurion filed its answer. Doc. 28. On October 20, 2025, Centurion filed a Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies or, in the Alternative, Motion for Judgment on the Pleadings. Doc. 43. On February 16, 2026, Centurion filed a Motion [50] for Summary Judgment, seeking judgment in its favor on the merits. Jarvis did not respond to either motion.

**Summary Judgment Standard**

The defendant seeks summary judgment in this case, arguing that the instant case should be dismissed for failure to exhaust administrative remedies – and on the merits. Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to

---

[6] The defendant states that the Medical records produced by MDOC post-dated the period of Centurion's contract to provide health care. The docket reflects a Notice of Service [45] of MDOC Inmate Documents to the plaintiff; however, it appears that those documents (which included over 800 pages of his medical records) were not filed with the court either electronically or conventionally.

admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

When reviewing the facts, the court must construe all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In

the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Exhaustion of Administrative Remedies

Jarvis has not exhausted his administrative remedies as to any allegation in is complaint (except for his claim regarding delay in his placement in a drug and mental health program).[7] The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). Congress meant for the exhaustion requirement to be a tool to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now

---

[7] As discussed below, though Jarvis exhausted administrative remedies as to this claim, those events took place after expiration of Centurion's contract to provide medical services to MDOC. Hence, though he has exhausted the grievance process as to these allegations, they do not involve Centurion.

exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. The Mississippi Department of Corrections has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must complete two steps to exhaust the ARP process. *See Gates v. Barbour*, No.

4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).[8]

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident.[9] *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id*.

The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute

---

[8] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id*. Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id*. If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

[9] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also  Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf  (last visited April 3, 2019)).

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[10]  *Id*.  If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and sending it to the Legal Claims Adjudicator.  *Id.*  The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.  *Id*.  If the inmate is unsatisfied with that response, he may file suit in state or federal court.  *Id*.

## Relevant Grievances

Jarvis filed multiple grievances during the potentially relevant period in this case; however, only five might relate in some way to his claims in this case:

**MSP-20-102 (filed January 16, 2020) (Doc. 50-2, p. 6-70)**

---

[10] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process.  Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening.  Inmate Handbook, Chapter VIII, Paragraph IV(H).

This grievance raises various allegations arising out of state-wide prison riots erupting in January 2020 (which prompted the Governor to issue an Emergency Order to outline action to quell the riots). In that grievance, the plaintiff (who was housed at the Mississippi State Penitentiary (MSP or Parchman)) was moved, along with other inmates, to Unit 32 of the MSP – a unit that had been closed down due to its poor condition. He stayed there for a week, from January 2, 2020, until January 9, 2020, when he was moved to the Tallahatchie County Correctional Facility (TCCF).

He alleges first that the defendants lost his personal property during the move. He also alleges that the conditions during his one week in Unit 32 were abysmal: (1) very little drinking water or food; (2) no bedding; (3) no running water; and (4) no way to tend to his personal hygiene. He also alleges that, prior to his move to Unit 32, the defendants used excessive force against him when he was slammed to the ground while his hands were cuffed behind his back during a surge of law enforcement officers into Parchman to quell the riot. Doc. 50-2, p. 69. He suffered a chipped tooth and bruising on his back and side as a result of the encounter. *Id.* He was examined and treated for his injuries upon arrival at TCCF. *Id.*

This grievance, MSP-20-102, was rejected because it involved an action yet to be taken or a decision yet to be made (the possibility that he may not receive proper treatment upon return to Parchman) – and because it sought relief beyond the power of the ARP to grant (damages and staff discipline). The plaintiff neither challenged the rejection of his grievance nor submitted a corrected one; as such, he failed to exhaust his administrative remedies as to these allegations.

**MSP-21-181 (filed January 29, 2021) (Doc. 50-2, p. 94-98)**

The plaintiff alleged in this grievance that, while attending school, he was away from his unit when medications were passed out, and he went without his medication for two days. He submitted

the grievance, received a First Step Response Form, and did not pursue the grievance to completion. As such, he did not exhaust his administrative remedies as to this allegation.

**MSP-21-243 (filed April 4, 2021) (Doc. 50-2, p. 100-102)**

In this grievance, the plaintiff alleged that he did not receive treatment when stitches on his head came out. The grievance was rejected, stating that there had been a lapse of over 30 days between the incident and the filing of the grievance. It is not clear whether such a lapse occurred, as the incident allegedly occurred on March 21, 2021, and the grievance was dated April 4, 2021 – a period of 14 days. The grievance was received by the ARP on April 27, 2021, which was 37 days after the incident. Nonetheless, the plaintiff did not challenge this finding; as such, he has not exhausted administrative remedies as to this allegation.

**MSP-21-841 (filed July 14, 2021) (Doc. 50-2, p. 130-134)**

The plaintiff alleged in this grievance that he wanted to receive mental health treatment and to be placed on medication for psychological issues. The First Step Response (citing his medical records) reflects that the plaintiff had been receiving monthly treatment for mental health issues and was taking three different medications for those issues. The plaintiff did not pursue this grievance further; as such, he has not exhausted his administrative remedies as to this allegation.

**MCCF-23-94 (filed April 16, 2023) (Doc. 50-2, p. 32-44)**

In this grievance, the plaintiff requested to be placed in the MDOC Mental Health, Substance Abuse Program. In the First and Second Step, the staff responded that mental health provider Wicks had met with him and explained that inmates under court order to attend and complete the program have first priority; the program was full, and he would be placed on a waiting list until a slot opened up. As noted in the First Step Response to an earlier grievance (MSP-21-841), the plaintiff had been receiving mental health treatment, and he did not allege in MCCF-23-94 that such treatment had been

- 11 -

terminated.  Instead, he alleged only that he was denied access to the program.  The plaintiff completed the Second Step of this grievance; as such, he has exhausted his administrative remedies as to this allegation.

### Allegations to Be Dismissed Without Prejudice for Failure to Exhaust

In sum, the following five of Jarvis' six claims will be dismissed without prejudice for failure to exhaust administrative remedies:  (1) The defendants used excessive force against him during and after a statewide prison riot in 2020 (causing a chipped tooth); (2) He suffered unconstitutionally harsh general conditions of confinement for a week after the riot when he was relocated to Unit 32 of the MSP; (3) The defendants lost his personal property during his relocation after the prison riot and failed to return it; (4) The showers at the Mississippi State Penitentiary do not meet the requirements of the Americans with Disabilities Act (ADA); and (5) The defendants failed to provide him with adequate medical care for his injuries after the riot and for his various physical ailments and mental health conditions.  As discussed immediately below, the plaintiff's sixth allegation (denial of his request to participate in the MDOC Mental Health, Substance Abuse Program) fails to state a claim upon which relief could be granted.

### The Plaintiff's Allegation Regarding Participation in a Mental Health and Drug Abuse Program Fails to State a Valid Constitutional Claim

Jarvis argues that the defendants' denial of his request to participate in a drug and mental health program rises to the level of an Eighth Amendment claim for denial of adequate medical care. This argument fails for several reasons.

### Denial of Adequate Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment .

- 12 -

. . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, "[d]eliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any

- 13 -

similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. Jarvis has not met this rigorous standard.

The plaintiff's sole remaining claim fails for several reasons. First, the denial of his entrance into the program occurred *after* Centurion's contract with MDOC had expired. As such, defendant Centurion had no duty to provide him with medical care at that time. In addition, Jarvis has not alleged that he had stopped receiving mental health treatment and medication during this time – only that he was denied immediate access to the mental health and substance abuse program.[11] However, as set forth in the responses to his grievance, he was not rejected for the program. Instead, medical staff put him on a waiting list behind those inmates who were under court order to attend the program. MDOC understandably decided to comply with various court orders before offering the program to the plaintiff, whose attendance was not mandated by a court. Such a decision does not constitute denial of adequate medical care.

Further, it is not clear whether such a program constitutes medical care, as the Fifth Circuit Court of Appeals has previously treated eligibility for such programs as a form of custody classification. *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (treating eligibility for drug treatment program as a classification issue in the context of a due process claim). In any event, the plaintiff has not shown that a delay in placing him in the program constituted "wanton disregard for any serious medical needs" – or that the denial of his request caused him harm. *Brauner*, 793 F.3d at 498. For these reasons, his sole remaining allegation, denial of adequate medical care by delaying his placement in a drug and mental health treatment program, must be dismissed with prejudice for failure to state a claim upon which relief could be granted.

---

[11] As explained in an earlier grievance, Jarvis visited a mental health professional once per month and had been prescribed three psychiatric medications to treat his mental health issues.

- 14 -

**Conclusion**

For the reasons set forth above, the motions [43], [50] by the defendants for summary judgment will be granted. All of the plaintiff's allegations, except his claim regarding a delay in placing him in the MDOC drug and mental health program, will be dismissed without prejudice for failure to exhaust administrative remedies. Further, his remaining allegation (denial of placement in a mental health and substance abuse program) will be dismissed with prejudice for failure to state a claim upon which relief could be granted. In light of this ruling, the plaintiff's motion [57] to conduct discovery will be dismissed as moot. In addition, as the plaintiff's allegations against all defendants will be dismissed, his motion [42] for default judgment against Richard Pennington will be dismissed as moot. A final judgment consistent with this memorandum opinion will issue today.

   **SO ORDERED**, this, the 13th day of May, 2026.

      /s/Michael P. Mills
      UNITED STATES DISTRICT JUDGE
      NORTHERN DISTRICT OF MISSISSIPPI